**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 16-cr-00267-LKG |
| ) | |
| DONTRAY JOHNSON, ) | Dated: July 24, 2025 |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER ON THE
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.  INTRODUCTION**

Defendant *pro se*, Dontray Johnson, has filed a motion for compassionate release and to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 1819.  This motion is fully briefed.  ECF Nos. 1819, 1821, 1865 and 1874.  No hearing is necessary to resolve this motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court **DENIES** Mr. Johnson's motion.

**II.  BACKGROUND AND PROCEDURAL HISTORY**

The Defendant, Dontray Johnson, is currently serving a 360-month sentence of imprisonment after having been convicted of one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.  ECF No. 953.  On September 25, 2018, Mr. Johnson pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.  ECF No. 893.

Pursuant to a written factual stipulation, Mr. Johnson agreed to the following facts:

> Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Superseding Indictment.  MMP was modeled after the Italian Mafia and was organized hierarchically with a "Don" at the top and various "Bosses," "Underbosses," "Capos," "Lieutenants," and "Mobsters" underneath.  For many years, MMP controlled the drug trade in large swaths of Northwestern Baltimore City.  The gang's drug shop in the

5200 block of Windsor Mill Road was particularly lucrative due to its close proximity to Interstate 70, and it frequently attracted drug customers driving from western Maryland and neighboring states. MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts, and eliminate rivals. For these and other reasons, MMP constituted an enterprise engaged in, and whose activities affected, interstate or foreign commerce.

The Defendant, Dontray JOHNSON, a/k/a "Gambino," a/k/a "Bino," was a member of Murdaland Mafia Piru ("MMP") during the dates of the racketeering conspiracy. The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving murder, extortion, robbery, witness tampering, witness retaliation, money laundering, and drug distribution. The Defendant agrees that the "Overt Acts" in which he is named in the Second Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

On November 22, 2012, in the 2000 block of North Forest Park Avenue, the Defendant murdered MMP member Antoine Ellis, a/k/a "Poopy" because he had shown disloyalty to MMP. Earlier that day, the Defendant had posted a comment to his Facebook account saying "198 n risen"—a reference to that year's murder tally in Baltimore City.

On November 1, 2013, the Defendant was featured in a rap video entitled "Stra8 Mobbin" that was posted to YouTube for the purpose of enhancing the gang's status and asserting MMP's dominance over its drug territories. The video features the Defendant with other MMP members, as well as footage of MMP's drug territories at the intersections of Windsor Mill Road and Forest Park Avenue, Gwynn Oak Avenue and Liberty Heights Avenue, Lauretta Avenue and Warwick Avenue, 27th Street and Boone Street, and Edmonson Avenue and Loudon Avenue. The Defendant brandishes a firearm in the video.

On July 31, 2015, investigators executed a search warrant at the Defendant's residence at 4 Wyegate Court, Owings Mills, Maryland. Among other things, investigators recovered approximately 28 grams of heroin, 70 rounds of .22 caliber ammunition, a bullet-proof vest, $1,480 in U.S. currency, and an "owe sheet" with a tally of drug debts owed by various MMP members and associates.

On September 29, 2015, the Defendant murdered MMP member Brian

> Johnson, a/k/a "Nutty B," because he refused to pay gang dues the Defendant was collecting for an MMP member.
>
> The Defendant agrees that he conspired with other members of MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy.

ECF No. 897 at 11-12.

The parties agreed in the Plea Agreement that the base offense level was 43 for each of the two murders that Mr. Johnson admitted to committing, pursuant to U.S.S.G. § 2A1.1(a). *Id*. at ¶ 6. Pursuant to U.S.S.G. § 2E1.1 n.1, each underlying racketeering offense is treated as a separate conviction. *Id*. The parties also agreed that the base offense level for the conspiracy to distribute controlled substances offense was level 30. *Id*. And so, the parties agreed that the total offense level was 45, pursuant to U.S.S.G. § 3D1.4. *Id*. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed in the Plea Agreement that a sentence of 360 months (30 years) of imprisonment would be a sufficient sentence in this case. *Id*. at ¶ 9.

The pre-sentence investigation report ("PSR") provides that the two racketeering offenses (Count I) have a base offense level and adjusted offense level of 43, pursuant to U.S.S.G. § 2E1.1(a)(2). ECF No. 937 at ¶¶ 19-30. The PSR also provides that the base offense level for the conspiracy to distribute controlled substances offense (Count II) is 30, pursuant to U.S.S.G. § 2D1.1(a)(5). *Id*. at ¶ 31.

The PSR also provides that the multiple count adjustment results in 2.0 units being assigned and that the greater adjusted offense level is 43. *Id*. at ¶¶ 37-38. In addition, the PSR provides that the greater adjusted offense level is increased by 2 levels, pursuant to U.S.S.G. § 3D1.4. *Id*. at ¶ 39. The PSR also provides that Mr. Johnson is a career offender, based upon his prior convictions of CDS distribution of heroin and possession with intent to distribute cocaine. *Id*. at ¶¶ 41 and 54. But, the otherwise applicable offense level determined under Chapters Two and Three of the Sentencing Guidelines is greater, pursuant to U.S.S.G. § 4B1.1(a). *Id*. at ¶ 41.

The PSR also provides that there is a two-level reduction of the adjusted offense level, pursuant to U.S.S.G. § 3E1.1(a). *Id*. And so, the total offense level is 43. *Id*. at ¶ 42. Lastly, the PSR provides that Mr. Johnson's criminal history score is 13, which results in a criminal history

category of VI.[1]  *Id*. at ¶¶ 52-53.  Lastly, the PSR provides that the Sentencing Guidelines range is life imprisonment, based upon a total offense level of 43 and criminal history Category VI.  *Id*. at ¶ 85.

The Court held a sentencing hearing on November 27, 2018.  ECF No. 950.  During the sentencing hearing, the Court accepted the parties' agreed-upon 360-month sentence.  *Id*.  And so, the Court sentenced Mr. Johnson to 360-months' imprisonment as to Count I, 360-months' imprisonment as to Count II, to run concurrent with Count I, for a total term of 360 months' imprisonment, to be followed by five years of supervised release for each Count, to run concurrently.  ECF No. 953.

Mr. Johnson is currently serving his sentence at FCI Butner and has a projected release date of July 2, 2041.  ECF No. 1865-1 (Govt. Exh. 1, BOP Inmate Data).  On April 18, 2023, Mr. Johnson sought compassionate release from his warden, citing COVID-19 risk, a disparity in his sentence because he would not be considered a career offender, that he would be eligible for the 1:1 ratio between powder and crack cocaine, and his exemplary conduct in prison.  ECF No. 1865-2 (Govt. Exh. 2, April 18, 2023, Request).  On June 27, 2023, the warden denied his request.  ECF No. 1865-3 (Govt. Exh. 3, Warden Denial).

On May 12, 2023, Mr. Johnson filed a motion for compassionate release.  ECF No. 1819.  On June 7, 2024, the Government filed a response to the Defendant's motion.  ECF No. 1865.  On June 28, 2024, Mr. Johnson filed a reply brief.  ECF No. 1874.

The Defendant's motion for compassionate release having been fully briefed, the Court resolves the pending motion.

### III.  LEGAL STANDARDS

#### A.  Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that the Court "may not modify a term of imprisonment once it has been imposed."  *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020).  But "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception to this rule is when the modification is "expressly permitted by

---

[1] The PSR provides that the adjusted criminal history score is 11 and that two points are added, because Mr. Johnson committed the instant offense while on federal supervised release.  ECF No. 937 at ¶ 52.

statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

In this regard, Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, No. 13-512, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id.* The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). But, in December 2018, Congress significantly modified the compassionate release provision when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. No. 115-391, 132 Stat. 5239 (2018).

Given this, this Court has held that 18 U.S.C. § 3582(c)(1)(A), as amended by the FSA, permits the Court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *Wiggins*, 2020 WL 4436373, at *2. And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release. *Id.*

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* at *3 (quoting § 3582(c)(1)(A)). And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a)

5

countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.  *Id.* (quoting § 3582(c)(1)(A)).

The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).   28 U.S.C. § 994(t).[2]  Relevant here, U.S.S.G. §1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary and compelling reason, but it may be considered along with other circumstances.  In addition, Section 1B1.13(b)(5) of the Sentencing Guidelines provides for a reduction of sentence if the Defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in Section 1B1.13(b)(1)-(4), "are similar in gravity."  *See* U.S.S.G. §1B1.13(b)(5).

## IV.   ANALYSIS

Mr. Johnson has moved for compassionate release and to reduce his 360-month sentence of imprisonment, upon the following combination of grounds: (1) he is no longer a career offender; (2) the sentencing disparity between cocaine and cocaine base (crack) offenses; (3) the disparity between his sentence and the sentence he would receive today; and (4) his "extraordinary rehabilitation and post-sentencing conduct."  *See* ECF No. 1819.  Specifically, Mr. Johnson argues that the Court should reduce his sentence, because: (1) he would be precluded from receiving an increase in his Sentencing Guidelines range for the conspiracy offenses at issue in this case post-*Norman*; (2) he would not receive the same sentence for the conspiracy to distribute heroin and cocaine base offense (Count II) under the Department of Justice's current policy on crack cocaine and cocaine sentencing disparities; (3) he would likely receive a sentence of 244 months today for Count II; and (4) his exceptional post-conviction conduct and rehabilitation warrants a sentence reduction.  *Id*. at 4-17.  And so, the Defendant requests that the Court reduce his sentence to 244 months.  *Id*. at 18.

The Government opposes Mr. Johnson's motion for several reasons.  First, the Government

---

[2] The Fourth Circuit has held that Section 3582(c)(1)(A) authorizes a finding of extraordinary and compelling reasons based upon, among other things, length of sentence. *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020).  This Court has also applied U.S.S.G. § 1B1.13(b)(6) to find extraordinary and compelling reasons in cases recently brought pursuant to Section 3582(c)(1)(A).  *See, e.g., United States v. Howard*, 2024 WL 112010, at *15 (D. Md. Jan. 10, 2024); *United States v. Brown*, 2023 WL 8653179, at *2 (D. Md. Dec. 13, 2023).

6

argues that Mr. Johnson has not properly exhausted his administrative remedies before commencing this action. ECF No. 1865 at 5. Second, the Government argues that Mr. Johnson is not entitled to a reduced sentence, because he improperly uses his motion for compassionate release to collaterally attack his conviction and sentence. *Id*. at 5-6. Third, the Government argues that Mr. Johnson has not met his burden to show an extraordinary and compelling reason for the Court to reduce his sentence. *Id*. at 6-13. Lastly, the Government argues that the relevant Section 3553(a) factors do not support compassionate release. *Id*. at 13-16. And so, the Government requests that the Court deny Mr. Johnson's motion. *Id*. at 17.

For the reasons that follow, the evidence before the Court shows that Mr. Johnson has not properly exhausted his administrative remedies before petitioning the Court for compassionate release. Mr. Johnson also fails to identify an extraordinary and compelling reason for compassionate release in this case. Lastly, the applicable Section 3553(a) factors also do not support compassionate release or a reduction in Mr. Johnson's sentence. And so, the Court DENIES the Defendant's motion.

**A.    The Defendant Has Not Properly Exhausted Administrative Remedies**

As an initial matter, the Government persuasively argues that Mr. Johnson failed to properly exhaust his administrative remedies before petitioning the Court for compassionate release. Pursuant to Section 3582(c)(1), Mr. Johnson must either fully exhaust all administrative remedies to appeal the BOP's decision on his petition for compassionate release, or wait 30 days from the date of his request, before filing a motion for compassionate release in this Court. *Wiggins*, 2020 WL 4436373, at *2; *see also United States v. Muhammad*, 16 F.4th 126, 128-29 (4th Cir. 2021). In this case, the evidence before the Court shows that Mr. Johnson filed his motion for compassionate release on May 12, 2023, which was less than 30 days after he submitted a request for compassionate release to his warden on April 18, 2023, and also before his warden responded to that request on June 27, 2023. ECF Nos. 1865-2 (Govt. Exh. 2, April 18, 2023, Request) and 1865-3 (Govt. Exh. 3, Warden Denial). And so, Mr. Johnson's motion is procedurally improper. *Wiggins*, 2020 WL 4436373, at *2.

**B.    The Defendant Has Not Shown An Extraordinary
And Compelling Reason To Reduce His Sentence**

Notwithstanding the procedural defects with Mr. Johnson's motion for compassionate release, the evidence before the Court also shows that Mr. Johnson has not identified an

extraordinary or compelling reason to warrant compassionate release in this case for several reasons.

First, Mr. Johnson has not shown that a sentencing disparity exists in this case based upon his status as a "career offender." The Fourth Circuit held that the disparity between the sentence that a defendant received, and the one they would receive if sentenced at the time they move for compassionate release, can be so great that it amounts to an extraordinary and compelling reason for granting compassionate release. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). But, Mr. Johnson has not made a showing that such circumstances are present in this case.

In this regard, Mr. Johnson correctly argues in his motion for compassionate release that he would no longer be considered a "career offender" under the current Sentencing Guidelines, because the racketeering conspiracy and drug conspiracy offenses in this case are not currently considered controlled substance offenses or crimes of violence.[3] ECF No. 1819 at 4. Mr. Johnson pled guilty to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute a controlled substance, in violation of 18 U.S.C. § 846 in 2018. ECF No. 893. But, after his sentencing, the Fourth Circuit held that a controlled substance conspiracy in violation of 21 U.S.C. § 846 is not categorically a controlled substance offense, and, thus, not a qualifying offense for "career offender" status under the Sentencing Guidelines in *United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019). The Fourth Circuit has also since held that a RICO conspiracy does not categorically qualify as a crime of violence in *United States v. Simmons*, 11 F.4th 239, 277 (4th Cir. 2021). And so, the Court agrees that Mr. Johnson would not qualify as a "career offender," if he were sentenced today.

But the factual record in this case also makes clear that Mr. Johnson's designation as a "career offender" did not impact the applicable Sentencing Guidelines range in this case. Rather, the PSR shows that Mr. Johnson's adjusted offense level would remain 45, regardless of whether he was designated as a "career offender." *See* ECF No. 937 at ¶¶ 38 and 41. Notably, the PSR provides that the two racketeering offenses in Count I have a base offense level of 43, pursuant to U.S.S.G. § 2E1.1(a)(2). *Id*. at ¶¶ 19-30. The PSR also provides that once Count I and Count II are grouped, the greater adjusted offense level is 43 and this greater adjusted offense level is increased

---

[3] A person qualifies as a "career offender" under the Sentencing Guidelines if the instant offense of conviction is a "controlled substance offense" or a "crime of violence," as defined in U.S.S.G. § 4B1.2(a) and (b).

by 2 levels, pursuant to U.S.S.G. § 3D1.4, resulting in a combined adjusted offense level of 45. *Id*. at ¶¶ 37-41.

Importantly, the PSR makes clear that, while Mr. Johnson is designated as a career offender, the otherwise applicable offense level determined under Chapters Two and Three of the Sentencing Guidelines is greater, pursuant to U.S.S.G. § 4B1.1(a). *Id*. at ¶ 41. And so, the PSR also makes clear that Mr. Johnson's combined adjusted offense level remains 45, regardless of his designation as a "career offender," and that Mr. Johnson's criminal history category of Category VI also remains in place, even without the designation as a "career offender."[4] *Id*. at ¶¶ 41 and 53.

In addition, the PSR provides that the Sentencing Guidelines range for a total offense level of 43 and criminal history Category VI is life in prison. *Id*. at ¶ 85. Nonetheless, the Court varied below that sentence and accepted the parties' stipulation to a sentence of 360 months' imprisonment. ECF No. 953. Given this evidence, Mr. Johnson has not shown that the fact that he would not qualify as a "career offender" today would result in him receiving a lower sentence in this case.

Mr. Johnson's argument that the Department of Justice's current policy of treating crack cocaine like powder cocaine for Sentencing Guidelines purposes would result in a lower sentence today, is also unconvincing. Again, the facts before the Court show that Mr. Johnson's sentence would remain the same if he were sentenced today pursuant to this policy. Indeed, as the Government correctly observes in its response in opposition to Mr. Johnson's motion, Mr. Johnson admitted to, among other things, conspiring with other members of his gang to distribute at least one kilogram or more of heroin, and that it was reasonably foreseeable to him that between one and three kilograms of heroin would be distributed by members of the conspiracy. ECF No. 897 at 12. Given this, Mr. Johnson's offense level under the Sentencing Guidelines for distributing this one kilogram of heroin, on its own, would be 30, pursuant to U.S.S.G. § 2D1.1(a)(5). ECF No. 937 at ¶ 31. More importantly, the PSR makes clear that Mr. Johnson's combined adjusted offense level in this case is 45, based upon the Sentencing Guidelines' grouping rules. *Id*. at ¶¶ 40 and 42. As discussed above, the total combined adjusted offense level in this case of 43 would still result in a Sentencing Guidelines range of life in prison, even if the crack cocaine at issue in this case is

---

[4] The PSR provides that the combined adjusted offense level is reduced by two levels, pursuant to U.S.S.G. § 3E1.1(a). ECF No. 937 at ¶ 41. The PSR contains two paragraphs that are designated as paragraph 41. *Id*.

entirely disregarded. And so, again, Mr. Johnson has not shown that there would be a disparity between the 360-month sentence that he received and the sentence he would receive today.

The Government also persuasively argues that Mr. Johnson has not shown a sentencing disparity would result with regards to the sentence for Mr. Johnson's racketeering offenses in Count I. The evidence before the Court shows that the underlying conduct for these offenses is that Mr. Johnson murdered two individuals. ECF No. 897 at 11-12; ECF No. 937 at ¶¶ 19-30. Given this, the Court is not persuaded that Mr. Johnson would receive a lower sentence for this conduct today. In reaching this conclusion, the Court observes that the Plea Agreement makes clear that he had a primary role in the murders at issue. *See* ECF No. 897 at 11-12. The Court also observes that Mr. Johnson has not yet served the majority of his sentence. *See* ECF No. 1865-1 (Govt. Exh. 1, BOP Inmate Data).

The sentencing data that Mr. Johnson relies upon to support his motion is also not persuasive. Notably, Mr. Johnson points to sentencing data showing that, in 2021, that the average sentence for murder was 244 months nationally and 298 months in the Fourth Circuit. *See* ECF No. 1819 at 12. But the Government also identifies more recent sentencing data from 2023, showing that the average sentence for murder in the Fourth Circuit, where the primary Sentencing Guideline was U.S.S.G. § 2A1.1, is 336 months. *See* ECF No. 1865-4 (Govt. Exh. 4, Sentencing Data). This sentencing data also shows that approximately 44% of those sentenced under those parameters received a sentence of 30 years or more, with 32.8% receiving a sentence of life in prison. *Id*. And so, Mr. Johnson's 360-month sentence in this case appears to fall within the range of comparable sentences today.

Because the Court is not persuaded that there would be a significant disparity between Mr. Johnson's 360-month sentence and the sentence that he would receive today for these offenses, Mr. Johnson has not shown that a sentencing disparity provides an "extraordinary and compelling reason" to reduce his sentence under § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020).

Lastly, while laudable, Mr. Johnson's successful steps towards rehabilitation during his period of incarceration, are not alone, or in combination with other relevant factors, a reason to reduce his sentence. *See* 28 U.S.C. §994(t) and the U.S.S.G. §1B1.13(d) ("rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" warranting compassionate release.). In this regard, Mr. Johnson informs the Court that he has, among other

things, taken numerous educational classes, earned a certificate of completion through Global University in Your New Life, and successfully held several jobs while incarcerated. ECF No. 1819 at 15. These accomplishments are important and commendable. But the Government represents to the Court that Mr. Johnson has also experienced some concerning infractions while incarcerated, including a September 2020 sanction for introducing drugs or alcohol into the prison and a November 2023 sanction for using drugs or alcohol in prison. ECF No. 1865 at 15. Given this, Mr. Johnson's record of rehabilitation, to date, appears to be somewhat mixed.

For each of the above reasons, Mr. Johnson has not shown an extraordinary and compelling reason to warrant compassionate release.

### C.    The Section 3553(a) Factors Do Not Support A Reduced Sentence

As a final matter, the relevant factors set forth in 18 U.S.C. § 3553(a) also do not support reducing Mr. Johnson's sentence for several reasons. *See Wiggins*, 2020 WL 4436373, at *3 (to be entitled to relief under Section 3582(c)(1)(A)(i), a defendant must also show that the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction in his sentence and that the sentence modification is consistent with the policy statement issued by the Commission in U.S.S.G. § 1B1.13.).

First, the nature and circumstances of the offenses for which Mr. Johnson stands convicted are very serious. Mr. Johnson conspired to participate in a violent street gang that was responsible for, among other things, several murders, including two murders that he admits to committing directly. ECF No. 897 at 11-12. As the Government observes, and the evidence shows, Mr. Johnson and his fellow gang members "left behind a legacy of fear, misery, and contempt for the rule of law." ECF No. 1865 at 14.

Mr. Johnson's personal history and characteristics also weigh against a reduction of his sentence. Mr. Johnson had an extensive criminal history, including several state and federal convictions, before being sentenced for the instant offenses. *See* ECF No. 937 at ¶¶ 45-50. Mr. Johnson was also well-known in the Baltimore community as a high-ranking "Boss" of MMP. ECF No. 1865 at 15. In addition, and as discussed above, Mr. Johnson's successful efforts to rehabilitate during his period of incarceration, are not alone, or in combination with other factors, a reason to reduce his sentence.

The Court also agrees with the Government that the continued need to deter the dangerous criminal conduct at issue in this case weighs against a sentence reduction. Gang-related and drug-

related criminal activity continue to plague many communities in Baltimore and the Court is concerned that the important goal of deterring such conduct would be undermined by a reduction of Mr. Johnson's sentence at this time. The Court is concerned about the need to protect the public from any danger that Mr. Johnson continues to pose, given his prior involvement as a leader of the MMP. And so, these concerns also weigh against a sentence reduction.

Lastly, the Court observes that Mr. Johnson's 360-month sentence is in alignment with the sentences that the Court imposed on his co-defendants in this case. *See* ECF No. 348 (Wedlock 156 months); ECF No. 722 (Pollock 144 months); ECF No. 1226 (Dent 168 months); ECF No. 902 (Spence 180 months); ECF No. 585 (Torry 168 months); ECF No. 979 (DeLeon 180 months). As discussed above, the evidence shows that Mr. Johnson was one of the most culpable co-defendants in this case and that he was as a high-ranking member of the MMP. *See* ECF No. 897. Given this, the Court is also concerned that a reduction of his sentence to 244 months would create an unwarranted sentencing disparity between this sentence and the sentences of Mr. Johnson's co-defendants. And so, the applicable Section 3553(a) factors simply do not support a reduction of Mr. Johnson's sentence at this time.

For each of the foregoing reasons, the Court **DENIES** the Defendant's motion for compassionate release.

**IT IS SO ORDERED.**

> s/Lydia Kay Griggsby
> LYDIA KAY GRIGGSBY
> United States District Judge